**UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

FILED

FEB **29** 2016

PATRICK KEANEY
Clerk, U.S. District Court
By_____
Deputy Clerk

| | |
|---|---|
| **(1) TOPAZ R. STALLINGS, now BROWN,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. _ **CIV** 1 6 - 0 7 8 - S P S |
| | ) |
| **(1) OKMULGEE TERRACE, LLC,** | ) |
| **a foreign for profit business corporation,** | ) |
| | ) |
| **Defendant.** | ) |

## COMPLAINT

Comes now the Plaintiff, Topaz R. Stallings, now Brown ("Brown") and she does bring this

action against the Defendant, Okmulgee Terrace, LLC, an Oklahoma limited liability company, for

claims of discrimination on the basis of race (African-American), hostile work environment and

retaliation in violation of Title VII of the Civil Rights Act, as amended, In support of these claims,

Plaintiff would state the following:

### PARTIES

1.   Brown, an African-American female, is the Plaintiff herein. She resides in Okmulgee,
     Okmulgee County, State of Oklahoma.

2.   Okmulgee Terrace, LLC is an Oklahoma limited liability company with a principal place of
     busines in Okmulgee, Okmulgee County, Oklahoma with more than fifteen (15) employees.

### JURISDICTION AND VENUE

3.   Jurisdiction is proper in this court pursuant to the Civil Rights Act of 1964, as amended.

4.   All actions alleged herein occurred within OKMULGEE County, Oklahoma.

5.   Venue is proper in this court pursuant to 12 O.S. §131.

Page 1 of 9

6.  Plaintiff received her Right to Sue letter from the U.S. Equal Employment Opportunity Commission on or about December 5, 2015.

## FACTS

7.  Brown was employed by Okmulgee Terrace, Inc. ("OTI"), a residential facility for mentally disabled individuals.

8.  Brown began her employment with OTI on or about May 1, 2015 in the Housekeeping Department.

9.  Jerod "Pete" Smith ("Smith"), Supervisor of the Housekeeping Department, hired Brown and initially had her working only on the weekends.

10. Smith, by Brown's second day of employment with OTI, began making sexually explicit and implicit remarks to Brown.

11. After Brown's first week at OTI, Smith entered a patient's room where Brown was working, and asked for a kiss. He then said, "I got you this job, a kiss is the least thing you can do for me."

12. Brown pushed Smith away, but he continued to approach her and then he kissed her. Brown pushed him away and left the room.

13. The following day, Brown went to the gym to clean, but Smith was already there. Smith said to Brown, "I can't believe you would do me this way after everything I've done for you."

14. On or about this same day, Brown was getting a mop bucket from a small room, when Smith entered and grabbed her on the buttocks. Brown told him to not touch her.

15. The following weekend, Smith called Brown at work and asked her for a picture of her

naked buttocks. After this call, Brown told Smith to never talk to her again.

16.    The next Monday, Brown called the Equal Employment Opportunity Commission ("EEOC") to make a complaint.

17.    She also called Sheila Montgomery ("Montgomery"), the Business Manager for OTI.

18.    She told Montgomery what had been happening with Smith. Brown also told Montgomery she did not want to work with Smith any more.

19.    Montgomery told Smith this was not the first time Smith had demonstrated this type of behavior, and added that "he knows better."

20.    Then Brown went to the office of Jerry Sutton ("Sutton"), the OTI Administrator.

21.    When meeting with Sutton she told him she didn't want to work with Smith any more.   Sutton said, "I'll talk to him."

22.    A few days later, Brown asked if she could attend DDCA classes in order to begin to quality as a nurse aide, in hopes of getting away from Smith. She was told she could attend these classes, but that she was still going to continue to work with Smith.

23.    Not too long thereafter, she heard that Margaret, the Dietary Manager, was possibly hiring. She asked to be considered for a position in the Dietary Department in order to get away from Smith. Shortly thereafter, she was hired to work in the kitchen making $7.25 an hour.

24.    Despite moving to the kitchen, Brown was still around Smith occasionally.

25.    Within days, Margaret left OTI and Brown asked if she would be considered for Margaret's position, Dietary Manager.

26.    The following day, Brown called Montgomery and asked if she could be considered for Margaret's job. On August 17, 2015, Brown was hired for the position of Dietary Manager making $8.75 an hour. However, according to OTC the position of Dietary Manager was an exempt position not paying any overtime.

27.    About two weeks after Brown was hired for the position of Dietary Manager, she was called in Montgomery's office and told OTI had received a letter from the EEOC. Montgomery said what is this.

28.    Montgomery said Sutton didn't know what to do about the letter from the EEOC regarding Brown's claims of discrimination.

29.    During this same conversation, Montgomery admitted to Brown that Smith had paid many girls working for OTI to sleep with them. She continued and said Brown had been warned verbally against this behavior by Montgomery.

30.    The following day, Sutton called Brown into his office and told her he had a letter from the EEOC in reference to her.

31.    Sutton asked in reference to the EEOC letter, "Are we Ok, are you going to drop it?" Brown said she wanted to think about it.

32.    Twenty minutes later, Brown returned and said she was going to go ahead and pursue her claims through the EEOC because nothing had been done about Smith.

33.    Sutton responded by saying he thought everything had been resolved because they moved her to the kitchen.

34.    About a month after this exchange, Montgomery wrote Brown up for various deficiencies in the kitchen. However, at no time did OTI train Brown for her position as Dietary

Manager.

35. On multiple occasions, Brown was made to work hours in excess of forty (40) hours a week, without being compensated for the additional work performed.

36. At all times, Brown was a non-exempt employee, despite the fact that OTI had categorized her job as an exempt position.

37. In November, 2015, Brown slipped and fell while at work and made a workers' compensation claim.

38. As a result of this fall, Brown bruised right side and now she is in experiencing pain in her back and neck.

39. After Brown fell, OTI Froze her ability to hire and fire within the Dietary Department and eliminated her responsibility for ordering food. OTI continued to let Smith work in the kitchen, despite Brown's multiple requests to keep Smith away from her.

40. OTI gave Smith the keys to the ice machine in the kitchen which meant Brown had to go directly to Smith to get these keys whenever she needed them.

41. OTI insisted Brown attend a Managers' meeting on Monday mornings with Smith. She continued to repeat that she didn't want to attend those meetings as long as Smith was going to attend.

42. Then OTI said, we are going to have to replace you because you don't have the license to run a kitchen. OTI was now complaining about her lack of credentials to run the kitchen some five (5) months after they promoted her into the position, knowing at all times she was not licensed. OTI did hire someone over Brown to run the kitchen.

43. Tammy, a coworker of Brown's from Housekeeping, continued to work in Housekeeping and

continued to be harassed by Smith. Every time she wanted to take a day off, Smith insisted

Tammy send her nude pictures of herself to get the time off. Over a three year period,

nothing was ever done to Smith to discipline him or make him stop harassing her.

44.   Finally, Brown quit February 5, 2016.

## FIRST CAUSE OF ACTION
## SEXUAL
## DISCRIMINATION

Brown realleges and incorporates herein the allegations contained in paragraphs 1

through 44 herein.

45.   Brown is an African-American female.

46.   Brown was sexually discriminated against by OTI when it allowed Smith to continue to

sexually harass her without any repercussions.

47.   Male employees were not harassed by Smith.

48.   As a result of the sexually harassment, and failure to discipline Smith, Brown has

suffered an intolerable work situation requiring her to resign from her position with OTI.

49.   As a result of this discriminatory treatment, Brown was humiliated and felt degraded.

50.   As a result of this discriminatory treatment, Brown's work environment became so

hostile and outrageous that she had no choice but to resign his employment with OTI.

51.   As a result of this sexual discrimination, Brown has lost income and benefits, incurred

legal fees and expenses, and suffered humiliation and degradation.

## SECOND CAUSE OF ACTION

## HOSTILE WORK ENVIRONMENT -

## HARASSMENT

Page 6 of 9

Brown realleges and incorporates herein the allegations contained in paragraphs 1

through 51 herein.

52.     Brown is a member of a protected class - female.

53.     Brown was subjected to insults and other verbal comments of a sexual nature, as well as

        being touched inappropriately by Smith.

54.     The conduct which Brown was subjected to was unwelcome.

55.     The conduct which Brown was subjected was sufficiently severe and pervasive to alter

        the conditions of her employment and created a sexually abusive and hostile work

        environment.

56.     Brown perceived the working environment to be abusive and hostile.

57.     A reasonable person in Browns' circumstances would consider the working environment

        to be abusive and hostile.

58.     As a result of this hostile work environment, Brown has lost income and benefits,

        incurred legal fees and expenses, and suffered humiliation and degradation.

### THIRD CAUSE OF
### ACTION RETALIATION

Brown realleges and incorporates herein the allegations contained in paragraphs 1

through 58 herein.

59.     Brown is a member of a protected class - female.

60.     Brown exerted her rights by filing a complaint with the EEOC.

61.     OTI learned of the filing with the EEOC by Brown.

62.     As a result of the filing of the complaint with the EEOC, Brown was subjected to

additional harassment by others at OTI.

63.   As a result of the filing of the complaint with the EEOC, Brown's complaints about Smith
      were constantly ignored by OTI.

64.   As a result of the filing of the complaint with the EEOC, the nature and duties of
      Brown's position with OTI changed.

65.   As a result of this hostile work environment, Brown has lost income and benefits,
      incurred legal fees and expenses, and suffered humiliation and degradation.

## FOURTH CAUSE OF ACTION
## VIOLATIONS OF THE FAIR LABOR STANDARDS ACT

      Brown realleges and incorporates herein the allegations contained in paragraphs 1
through 58 herein.

59.   At all times, Brown was a non-exempt employee making only $8.75 per hour at the most for
      OTI.

60.   OTI controlled every aspect of Brown's job, including the hours she worked, the days she
      worked, the nature of her job duties, leaving Brown with very little independent control or
      decision-making authority.

61.   OTI failed to pay Brown for all of the hours she worked in her position with OTI.

62.   Brown now seeks payment for all hours for which she was entitled to payment by OTI,
      including a premium for any hours worked in excess of forty (40) hours per week.

63.   Additionally Brown seeks liquidated damages for these hours for which she worked and was
      not compensated.

64.   As a result of failing to compensate Brown in accordance with the Fair Labor Standards Act,

Page 8 of 9

Brown is entitled to back pay, liquidated damages, attorney's fees and expenses.

Respectfully submitted,

Topaz R. Brown

1023 E 1st
Okmulgee Ok
74447

918-954-3234